# United States District Court

**SOUTHERN DISTRICT OF FLORIDA**

UNITED STATES OF AMERICA

v.

**JAY R. STOELTING**
(Male, DOB: 12-26-58)

AND

**MICHAEL D. MUNRO**
(Male, DOB 11-07-60)

(Name and Address of Defendant)

**CRIMINAL COMPLAINT**

CASE NUMBER: 03-46-FJL

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. From, on or about <u>March 4, 2003</u>, to on or about <u>July 21, 2003</u>, in <u>Martin and St. Lucie</u> Counties, in the <u>Southern</u> District of <u>Florida and elsewhere,</u> the defendants,

> did knowingly combine, confederate, and agree with each other and with others known and unknown, to conduct and attempt to conduct financial transactions, affecting interstate commerce, involving property represented to be the proceeds of specified unlawful activity with the intent to conceal or disguise the nature, location, source, ownership, or control of the property believed to be the proceeds of specified unlawful activity,

in violation of Title <u>18</u> United States Code, Sections <u>1956(a)(3)(B) and 1956(h)</u>.

I further state that I am a <u>Special Agent, Bureau of Immigration and Customs Enforcement,</u> and that this complaint is based on the following facts:

**PLEASE SEE ATTACHED AFFIDAVIT.**

Continued on the attached and made a part hereof:    __X__ YES ____ NO

_____
Signature of Complainant
Christopher S. Harvey
Special Agent
Immigration and Customs Enforcement

Sworn to before me, and subscribed in my presence,

July 21, 2003                                at    West Palm Beach, Florida
Date                                               City and State

LINNEA R. JOHNSON
UNITED STATES MAGISTRATE JUDGE        _____
Name and Title of Judicial Officer      Signature of Judicial Officer

## AFFIDAVIT

I, Christopher S. Harvey, after being duly sworn, depose and state:

1. I am a Special Agent (S/A) with the Department of Homeland Security, Immigration and Customs Enforcement (ICE) having been so since March 2003. Prior to March 2003, I was employed by the U.S. Customs Service as both a Special Agent and a Marine Enforcement since 1998 and prior to that a Deputy Sheriff since 1996. I have been assigned to the investigation of cases involving the laundering of currency, narcotics smuggling and forfeiture of narcotics-related assets. These investigations have included the utilization of surveillance techniques, undercover activities, the interviewing of subjects and witnesses, and the planning and execution of search, arrest and seizure warrants. I have also received training on the aforementioned investigations at the Federal Law Enforcement Training Center in Glynco, Georgia.

2. I have conducted a money laundering investigation of KENNETH MORRISON, JAY STOELTING and MICHAEL MUNRO. I participated in this investigation as one of the case agents and have personally interviewed those with information as set forth herein, or have reviewed tapes of recorded conversation,

transcriptions of such conversations and relevant reports of interviews or other investigative information.

3. The information in this affidavit is based upon my personal participation in this investigation, information provided to me by other ICE Special Agents and agents and/or officers from other law enforcement agencies as well as the review of financial documents more fully described below.

4. Information in this affidavit is also based on discussions and investigative work performed with S/A Drew Schmit of the Internal Revenue Service Criminal Investigation (IRS-CI). S/A Schmit has been employed by the IRS for over twelve years. In that time, he has conducted numerous and complex financial investigations involving the violation of various sections of Title 18, Title 26 and Title 31 of the United States Code. These violations included many different types of criminal tax fraud, the avoidance of the requirements to report large currency transactions and conspiring to defraud the United States government. These investigations have included the utilization of surveillance techniques, undercover activities, the interviewing of subjects and witnesses, and the planning and execution of search, arrest and seizure warrants. He has also attended numerous courses relating to the investigation of alleged violations of the

Internal Revenue Code, including training received at the Federal Law Enforcement Training Center in Glynco, Georgia.

    5. In February, 2003, I, along with S/A Schmit, met with a cooperating defendant (CD) who had recently completed his assistance in a money laundering investigation which resulted in the arrests of two individuals. These two individuals, in the interim, have plead guilty to money laundering charges and are currently awaiting sentencing. The CD told us that over a long period of time he had met an individual he identified as Kenneth Morrison in a particular restaurant. The CD told us that recently he and Morrison discussed their line of work at which time the CD told Morrison that he was in the "money business". Morrison said he too was in the "money business", a phrase the CD understood to mean money laundering. Morrison stated he had an associate in Stuart, FL, that could clean money through a travel business located in Orlando, FL. The CD was at that time on probation for violation of 18 USC 1956(h), and desired to provide substantial assistance to have the possibility of his term of probation amended. The US Attorney's Office in the Southern District of Florida had previously filed motions pursuant to USSG 5K1.1 and Rule 35 of the Federal Rules of Criminal Procedure based on the Cd's substantial assistance.

6. In order to determine if Morrison was offering to launder money for the CD, the CD was authorized by your Affiant to clandestinely record conversations with Morrison. During these conversations, a face to face meeting with Morrison and the CD was arranged, in a place that could be monitored. On March 3, 2003, the CD contacted Morrison and set up a meeting to take place on March 5, 2003. This phone conversation was recorded.

7. On March 4, 2003, the CD talked with Morrison on several occasions to discuss the meeting planned for March 5, 2003. During one of these recorded phone conversations, Morrison introduced "Jay", who was also on the phone line, in a conference call setup. "Jay", who was later identified as Jay Stoelting, stated he could not attend the meeting because he was in Orlando. Following this phone conversation, Morrison contacted the CD and asked the CD for his internet e-mail address so that information could be e-mailed to him which would assist in facilitating the laundering of the currency. Following this conversation, the CD received an e-mail from "jrs1313@hotmail.com" which included an attached six page "Sales Marketing Contract". The e-mail was signed by Jay R. Stoelting, Vice President of Sales, CRI, LLC. According to the senders' identification, as listed on the CD's e-mail,

4

Stoelting's organization was listed as Club Resort Intervals with a work address of 814 Elm Street, Manchester, NH. Stoelting's residence was listed as 518 SW South Carolina Drive, Stuart, FL. Additionally, Stoelting's cell phone was listed as (772) 201-8734.

8. A check of Hotmail's subscriber listing for "jrs1313@hotmail.com" shows that this account is registered to Jay Stoelting.

9. According to public information provided by the State of New Hampshire, Corporations Division, Club Resort Intervals is a registered New Hampshire corporation with a business address of 814 Elm Street, Suite 104, Manchester, NH. Michael D. Munro is the listed registered agent with an address of 57 N. Stark Highway, Weare, NH.

10. According to the Club Resort Intervals internet webpage, the company is located at 814 Elm Street, Suite 204, Manchester, NH. Their phone number is listed as (603) 669-1555 and Michael Munro is listed as the president. The company was formed in 1987 as Key Resorts International and later changed to Condominium Resorts International, LLC.

11. On March 5, 2003, the CD met Morrison at his office located in West Palm Beach, Florida. This meeting was video/audio taped. During this meeting, the CD introduced

Morrison to ICE Undercover S/A Eddie Cruz (UCA Cruz), who told Morrison that he had significant amounts of cash that were the result of his organization's sale of heroin. Morrison outlined his ability to pass money through a travel company he worked for. He identified this firm as Club Resort Intervals and indicated that the cash would be passed off as being related to the sales of vacation packages. Morrison referred to the "Sales Marketing Agreement" which had previously been e-mailed to the CD. This contract had a pre-factored commission of 10% which Morrison said would be comprised of payments of 2% to him, 2% to Stoelting and 6% to the President of the company in New Hampshire, for the laundering of the currency.

12. On April 25, 2003, UCA Cruz met with Stoelting and Morrison at the Holiday Inn Express, Ft. Pierce, FL. This meeting was video/audio taped. During this meeting, the laundering of the currency was discussed. Stoelting said that a contract would be drawn up to make it look as if a UCA Cruz' company was selling cruise packages. Stoelting acknowledged that the travel packages were just a cover and no packages would ever trade hands. UCA Cruz told Stoelting that he had a large amount of currency coming in the following week, and that he would like to drop off $25,000 to be passed through

6

the travel company and back to the undercover bank account. Stoelting asked UCA Cruz if he could "get some shit". Morrison added that he "knew this was going to come up". UCA Cruz then told Stoelting and Morrison that his organization had a line on high-grade heroin, and not cocaine, and that Stoelting probably wouldn't want the heroin. UCA Cruz added that he worked on the currency side of the business and didn't handle the narcotics. During this same meeting, while outlining possible scenarios for passing money through his company in the future, Stoelting indicated that his company also owned Key Marketing, which was a local telemarketing company. Stoelting and Morrison were given the name of Costa Trading and Investments and a SunTrust bank account number to which the laundered currency was to be wired back.

13. According to the Florida Department of State, Division of Corporations, Key Marketing is a registered corporation. Michael D. Munro, 814 Elm St., Suite 104, Manchester, NH, is the president and director. A principal address of 814 Elm St, Suite 104, Manchester, NH, is listed along with a mailing address of 7265 Estapma (sic) Circle, Suite 201, Fern Park, FL. A 2002 Uniform Business Report filed with the State of Florida Secretary of State lists the same addresses and a phone number of (603) 759-8206.

14. On April 25, 2003, immediately following the meeting with UCA Cruz, according to a court ordered pen register, Stoelting placed a call to (603) 759-8206. As mentioned in paragraph 14 above, this phone number was listed as the daytime contact number on a State of Florida filing for Key Marketing, which listed Munro as president.

15. On April 29, 2003, a meeting was scheduled to take place in Stuart, FL. During this meeting, Morrison was scheduled to pick up $25,000 in currency, along with $2,500 in commission. Morrison did not appear at this meeting. Following Morrison's failure to appear UCA Cruz contacted Stoelting who told him that he would find out what happened.

16. According to a pen register, on April 29, 2003, immediately following UCA Cruz contacting Stoelting, Stoelting placed a call on his cell phone to (603) 759-8206. As mentioned in paragraph 14 above, this phone number was listed as the daytime contact number on a State of Florida filing for Key Marketing, which listed Munro as president. Following that call, Stoelting received two calls from (603) 669-1555. This number was previously mentioned as belonging to Club Resort Intervals.

17. On April 30, 2003, Stoelting contacted UCA Cruz and stated that during a phone conversation with Morrison,

8

Morrison stated that he attempted to pick up the money; however he could not locate the proper location. Stoelting also indicated that Morrison would no longer be a part of the operation, adding that he was unreliable. Stoelting said that the commission would remain at 10%, and that he would keep Morrison's 2%, changing his cut to 4%, because he would be taking more risk.

18. On May 9, 2003, UCA Cruz met with Stoelting at the Mainstay Suites Hotel, Port St. Lucie, FL. During this meeting, IRS UCA Alfonso Herrera was introduced to Stoelting as the person that would be handing off currency to Stoelting. Stoelting was given $25,000 in currency, along with an additional $2,500 commission. During this meeting, Stoelting again asked UCA Cruz if he could get him some "coke". He added that if "you guys could get it, it's gotta be the best." UCA Cruz told Stoelting that they did not mix drugs with the currency.

19. On May 13, 2003, $25,000 was wired to the Costa Trading and Investments account located at SunTrust Bank, Miami, FL. According to the wire transfer, the sender was listed as "Jay R. Stoelting" with the address of 518 SW S. Carolina Drive, Stuart, FL. The sending bank was Wachovia Bank of Florida with a Jacksonville address. The 518 SW S.

Carolina Drive is known to me to be the residence of Stoelting.

20. On May 30, 2003, UCA Herrera met with Stoelting in a parking lot of the McDonalds Restaurant, 7596 Lost River Road, Stuart, FL. During this meeting, UCA Herrera gave Stoelting $50,000 in currency along with an additional $5,000 in commission. Stoelting said he would have the money wired back in two weeks.

21. According to a Currency Transaction Report (CTR) filed by Bank of America, Altamonte Springs, FL, on June 5, 2003, $15,000 in currency was deposited to an account in the name of Key Marketing, 814 Elm St., Manchester, NH. The transactor was listed as Michael D. Munro with an address of 57 Stark Highway, Weare, NH.

22. According to a CTR filed by Banknorth, Weare, NH, on June 6, 2003, Michael D. Munro deposited $10,400 into a personal account. Munro's address was listed for that account as 57 N. Stark Highway, Weare, NH.

23. On June 11, 2003, $49,900 was wired to the Costa Trading and Investments account located at SunTrust Bank, Miami, FL. According to the wire transfer, the sender was listed as Key Marketing, Inc. The sending bank was Bank of America, Tampa, FL.

24. On June 13, 2003, UCA Herrera met with Stoelting in a parking lot of the McDonalds Restaurant, 7596 Lost River Road, Stuart, FL. During this meeting, UCA Herrera gave Stoelting $100,000 in currency along with an additional $10,000 in commission. Stoelting also returned $100 in currency which completed the return of the remainder of the currency given to Stoelting on May 30, 2003. Stoelting explained to UCA Herrera that Munro was the owner of the company and Munro thought it would be suspicious to wire an even amount so it was changed to just under $50,000. Stoelting said Munro had two offices, one in New Hampshire and one in Orlando, and traveled to Orlando every two weeks or so. UCA Herrera inquired about laundering larger amounts of currency, up to $500,000, and Stoelting said he would have to discuss it with Munro.

25. Following the conclusion of this meeting, according to a pen register on Stoelting's cell phone, there was a phone call to (603) 759-8206, which lasted less than one minute. Three minutes following this call, Stoelting's cell phone received two incoming calls from the same number, each lasting approximately seven minutes in length. As mentioned previously in paragraph fourteen, this phone number was listed as the daytime contact number on a State of Florida filing for Key

11

Marketing, which listed Munro as president.

26. According to a CTR filed by Bank of America, Casselberry, FL, on June 16, 2003, $29,390 in currency was deposited in multiple transactions to an account in the name of Key Marketing Inc., 7265 Estapona Circle, Suite 201, Casselberry, FL. The transactor(s) was not listed on the CTR.

27. On June 24, 2003, $45,000 was wired to the Costa Trading and Investments account located at SunTrust Bank in Miami, FL. According to the wire transfer, the sender was listed as Club Resorts, 814 Elm, Manchester, NH. The sending bank was Banknorth of Manchester, NH.

28. On June 27, 2003, $55,000 was wired to the Costa Trading and Investments account located at SunTrust Bank in Miami, FL. According to the wire transfer, the sender was listed as Condominium Resorts Int. LLC, 814 Elm St., Suite 104, Manchester, NH. The sending bank was Banknorth of Manchester, NH.

29. According to public information provided by the State of New Hampshire Corporations Division, Condominium Resorts International LLC, is a registered New Hampshire LLC with a business address of 57 N. Stark Highway, Weare, NH. Michael D. Munro is the listed registered agent with the same address.

30. On July 9, 2003, UCA's Cruz and Herrera met with Stoelting in a parking lot of the Ron Jon Surf Shop, located at 4151 N. Atlantic, Cocoa Beach, FL. During this meeting, Stoelting placed a call to Munro and Stoelting placed him on a speaker phone. During this conversation, Munro apologized for not being able to attend the meeting. UCA Herrera gave Stoelting $100,000 in currency along with the an additional $10,000 commission.

31. According to the pen register of Stoelting's cell phone, while Stoelting was meeting with the undercover agents, Stoelting made an eleven-minute outgoing call to (603) 759-8206. Following the conclusion of the meeting, Stoelting received an incoming call lasting 15 minutes from the same number. As mentioned previously in paragraph fourteen, this phone number was listed as the daytime contact number on a

State of Florida filing for Key Marketing, which listed Munro as president.

FURTHER YOUR AFFIANT SAYETH NAUGHT.

Christopher S. Harvey
Special Agent
Immigration and Customs Enforcement

Sworn and subscribed before me this _21_ day of July, 2003.

LINNEA R. JOHNSON
UNITED STATES MAGISTRATE JUDGE

14